SWEENEY v. BONACCI et al.

HONEYWELL v. BONACCI et al.

Nos. 9661, 9662.

United States Court of Appeals
Third Circuit.

Argued Nov. 4, 1948.

Decided Feb. 28, 1949.

.Raymond A. White, Jr., of Philadelphia, Pa., for appellants.

Henry Panfil, of Philadelphia, Pa. (Moore, Panfil & James, of Philadelphia, Pa., on the brief), for John Louis Sweeney.

J. Kennard Weaver, of Philadelphia, Pa., for Ernest W. Honeywell.

Before BIGGS, Chief Judge, and McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

These diversity of citizenship actions were brought pursuant to the laws of Pennsylvania [1] to recover for the death of two young men who died as a result of an accident which occurred at a point called Janney Hill in Pennsylvania along U. S. Route No. 1 ("Highway"). The jury returned substantial verdicts for the plaintiffs on which judgments were entered.[2] The defendants' motion for judgment under Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A., having been denied, these appeals were taken. The sole question presented for review is whether there was sufficient evidence of defendants' negligence to submit to the jury.

There is no dispute about the description of the Highway involved. It runs more or less in an east-west direction. There are four concrete lanes with an asphalt shoulder, a concrete gutter, and a high dirt embankment on each side. Traffic in the two north lanes travels west up the incline of Janney Hill to Philadel-

---

[1] 20 P.S. § 772, as amended, a "survival of actions" statute, and 12 P.S. §§ 1601, 1602, a "wrongful death" statute. A complaint was filed by the father of each decedent as duly appointed adminis-trator, and each of the two complaints alleged a cause of action based on each statute.

[2] Each plaintiff was awarded $12,500 in his "survival" action. The plaintiff

phia, Pennsylvania; traffic in the two south lanes travels east down the grade to Trenton, New Jersey. As at the trial, for convenience we shall also number the concrete lanes from 1 to 4 beginning with the northernmost westbound lane. Almost at the bottom of Janney Hill, toward Trenton, there is another roadway which meets the north side (Lane 1) of the Highway at right angles. This roadway we shall refer to as the "cut off".

The defendants' vehicle was a loaded tractor-trailer being operated, at the time of the accident, by one of their employees in the course of his employment. He had with him a woman companion, Ada Crawford. Proceeding east from Philadelphia to Trenton, the tractor-trailer first collided with a Ford, in which the plaintiffs' decedents were riding, and then with a Dodge coupe, occupied by one Tierney, who was driving, and its owner, one Lynch. The driver of the tractor-trailer died as a result of injuries sustained; Ada Crawford, Tierney, and Lynch were injured.

■ Viewed in favor of the plaintiffs, as it must be, the evidence concerning the accident is as follows. It happened at about 10:20 P.M. on March 29, 1947. The weather was clear and dry until that time, or a few minutes afterward, when a light rain began to fall. Several minutes prior to the accident, the Dodge approached the Highway on the cut-off and stopped to permit the Ford, which was traveling west on the Highway, to pass. After the Ford passed, Tierney made a right turn west onto Lane 1 of the Highway and continued in that lane up Janney Hill at a distance of approximately 200 feet behind the Ford, which was in Lane 2. The red "tail" lights of the Ford were visible. The two vehicles maintained the same speed, about thirty-five to forty miles per hour, and the same relative positions for about a half-mile when, still on the hill, Tierney saw a sudden "flash" and heard a "distant smash". Almost simultaneously Tierney and Lynch saw a "truck" coming at them "very fast" diagonally across the Highway from Lane 3. The "truck", we know

now, was defendants' tractor-trailer. Tierney and Lynch both testified that at no time did they see any vehicle or the lights of any vehicle approaching in eastbound Lanes 3 and 4 until after the "flash" and "smash" when they first saw the tractor-trailer; at that time it showed no lights.

Several minutes after the collision, the tractor-trailer was found on its right side, headed east, in Lane 1 and on the asphalt shoulder north of it; its lights were out, and physical examination disclosed that its left front had been damaged by contact. The Dodge was on or against the side of the north embankment, facing west, about 75 feet above, or west, of the tractor-trailer; its lights were on, and its left side from the door to the rear proved where it had been struck by the tractor-trailer. The Ford was approximately 50 feet west of the Dodge, in Lane 1, facing east toward Trenton; while its front was severely damaged, it was evident that the initial impact was received at its left front. There was also evidence on behalf of the plaintiffs of various markings on Lanes 1 and 2, the north shoulder and the north embankment, imbedded in which were found pieces of red glass from a "tail" light of the Ford. Particularly noteworthy is the evidence concerning a mark extending for 127 feet from a point just north of the center of Lane 2 downward across Lane 1 and the asphalt shoulder to the gutter, whence began a deep gouge in the embankment extending for 70 feet. It was at about the end of this gouge that the tractor-trailer lay.

■ The testimony of Tierney and Lynch is crucial. Tierney said that the Ford was in Lane 2, and ahead of him, at the time he saw the "flash" when the collision of the Ford and tractor-trailer occurred. Both men testified that they saw no lighted vehicle approaching from the west. The jury could properly find, on this evidence, that the tractor-trailer was on the wrong side of the highway, and was traveling without lights at the time of the accident. Under the law of Pennsylvania, a prima facie case of negli-

---

in No. 9661 (Sweeney) and the plaintiff in No. 9662 (Honeywell) were awarded $1392.30 and $668, respectively, on the "wrongful death" actions.

gence is thus made out. Davin v. Levin, 1947, 357 Pa. 554, 556, 55 A.2d 364; Murray v. Lavine, 1927, 92 Pa.Super. 372, 374. And in our opinion, the evidence is sufficient to support the result reached by the jury. Schofield v. Druschel, 1948, 359 Pa. 630, 59 A.2d 919. That the defendants developed contradicting testimony[3] did not, of course, warrant the direction of a verdict; it merely accentuated the necessity of the jury function to resolve the decisive issue of credibility.

The defendants place reliance upon such cases as Donaldson v. Pittsburgh Rys. Co., 1947, 358 Pa. 33, 55 A.2d 759, and Flowers v. Dolan, 1944, 155 Pa.Super. 378, 380, 38 A.2d 429, to which we add Stanalonis v. Branch Motor Exp. Co., 1948, 358 Pa. 426, 57 A.2d 866. In these cases, the proof of negligence was attempted by circumstantial evidence alone. In such situation, the Pennsylvania rule is that the evidence must so picture what actually happened as to enable a finding that the defendant was the culpable party. Thus, the evidence must be such that the only reasonable inference to be deduced is that the accident was caused by the negligence of the defendant; nevertheless, it is not required that the proof eliminate every possible cause other than the one on which the plaintiff relies, but only such other causes, if any, as fairly arise from the evidence.

We do not think that the instant case comes within the classification of the cases cited. Eliminating from Schofield v. Druschel, supra, the issue of contributory negligence, we have a case much closer to that *sub judice*. There, Schofield was traveling on his proper side of the road when there was a sudden "flash"; he had not seen any vehicle approach from the opposite direction; the circumstantial evidence suited his theory of the case. On that set of facts, the Pennsylvania Supreme Court upheld submission to the jury, and its verdict in favor of Schofield. In the instant case, while the circumstantial evidence may not have been conclusively indicative of the manner in which the accident happened, the plaintiffs' position is supplemented by eye witnesses, a factor absent in the cases defendants refer to. The circumstantial evidence certainly bears out the plaintiffs' theory, and crediting all the evidence in their favor, the only way in which the accident could have happened was for the tractor-trailer to have entered the westbound traffic lane. The failure of the evidence to offer an explanation for the movement of the defendants' vehicle is not an adequate defense, for the fact that it was in the wrong lane establishes, so we have noted, a prima facie case of culpability.

For the reasons stated, the judgments in the District Court will be affirmed.

---

[3] Ada Crawford testified that the tractor-trailer was proceeding eastward in Lane 4 at about thirty miles per hour; that its lights were on; that she saw the Ford passing the Dodge on the Highway, and in doing so it crossed the center of the Highway striking the tractor-trailer. She also testified that the driver of the tractor-trailer attempted to turn to the right, but it was too late; that with the impact, he was thrown out of the cab; and that the vehicle, out of control, passed to the north side of the road and upset against the embankment.