**SIVERT v. PENNSYLVANIA R. CO.**

No. 10524.

United States Court of Appeals
Seventh Circuit.

June 20, 1952.

Rehearing Denied July 15, 1952.

Theodore Schmidt, P. J. Cronin, Chicago, Ill., John W. Costello, Edward Wolfe, Chicago, Ill., for appellant.

James A. Dooley, Chicago, Ill., for appellee.

Before KERNER, FINNEGAN and SWAIN, Circuit Judges.

FINNEGAN, Circuit Judge.

Plaintiff, as administratrix, brought this action under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60 to recover damages for the death of her husband. Trial was had before a jury. A verdict for $50,000 was returned in favor of plaintiff. Judgment was entered on the verdict. This appeal is from that judgment.

In her complaint plaintiff alleges that defendant carelessly and negligently:

"(a) operated, maintained and controlled an engine and train of cars so that plaintiff's decedent was injured and killed;

"(b) failed to provide plaintiff's decedent with a reasonably safe place within which to work;

"(c) operated, maintained and controlled an engine and cars without keeping a proper and sufficient lookout * * *;

"(d) operated, maintained and controlled an engine and train of cars at a high, dangerous and excessive rate of speed; and

"(e) failed to give warning of the approach of said engine and train of cars to plaintiff's decedent."

Plaintiff further alleges: "That as a direct and proximate result of one or more of the foregoing wrongful acts of defendant, plaintiff's decedent then and there received injuries which caused his death * * *."

In its answer defendant denies all of the material allegations of the complaint, and as an affirmative defense avers that the negligence of the decedent was the sole proximate cause of his injuries and death.

Defendant's motions for directed verdicts in its favor at the close of plaintiff's case and at the close of all the evidence, were overruled. Its written motion asking that the pleadings be amended to show the name of plaintiff to be Kathryn Sivert Crow, she having remarried after her appointment as

administratrix, was · denied. Its motions for judgment notwithstanding the verdict and for a new trial were overruled.

Viewing the evidence in the light most favorable to plaintiff, the jury might reasonably have found the following facts:

Sivert was employed by defendant as a carpenter foreman and while engaged in performing his duties on May 21, 1948, at a point about a mile west of Knightstown, Indiana, was killed when struck by one of the passenger engines of the defendant on or near a railway bridge on defendant's right of way.

Sivert was 39 years of age. He had been employed by defendant for about nineteen years, and earned about $291.00 per month at the time of his death. He married plaintiff in 1942 and lived with her as her husband up to the time of his death. No children were born of the marriage. Prior to the date of his death he had been in good health. After she was appointed administratrix, plaintiff remarried and at the time of the trial her legal name was Kathryn Sivert Crow.

Photographs, surveyors' plats and maps showing the scene of the accident are in evidence. The parties stipulated as to the movements of defendant's trains across the bridge for thirty days prior to and on May 21, 1948, the date of Sivert's death.

Sivert, in charge of a crew of six men, had worked on the bridge for two weeks prior to the date of his death. The bridge consisted of three steel girders resting on a masonry foundation. It was approximately 39 feet long and 15 or 16 feet in height. It extended over the New York Central tracks. The area between each of the ties on the bridge, spaced about eight inches apart, is open so that one can see the New York Central tracks below. The Pennsylvania Railroad tracks are elevated, being built upon a fill of sufficient height to permit its tracks to run over the New York Central tracks at this point. The blast from the engines of the New York Central locomotives had eaten away the bottom steel plates on the girders carrying the westbound and eastbound tracks. New plates and "hitch" plates were to be installed underneath these girders as required. The repairs to the girders on the eastbound tracks were completed about four days before the accident and those on the westbound tracks the day before.

While the repairs were being made Sivert posted crew members, at convenient locations along the right of way, as lookouts to warn the working crew of approaching trains.

On the morning of the accident, Sivert took his crew to the bridge to clean up and load a truck with scrap and other material left there after the completion of the repair work. All crew members, except Sivert and E. C. Hill, left with the truck of scrap material for Dunreith, Indiana. Sivert and Hill remained to inspect the repaired bridge under train traffic. They were to test the plates put in under the bridge. The proper way to make an inspection under the circumstances was to station a man at the southeast corner of the bridge, between the east and west bound main tracks and station another man at the northwest corner, at a place off the tracks. In order to see the reaction of the bridge under train traffic, the inspector must have his eyes level with either the ties or the bridge seat. He must be so positioned that his face is about level with the shim or bearing, which is below the rails.

The master carpenter of the Philadelphia division of the defendant testified that the proper way to inspect the bridge in question is from a ladder from the New York Central tracks below.

Decedent had been a bridge inspector before coming on this job and it was his responsibility to see that the repair work was properly done and inspected. It is not customary to send out watchmen when testing a bridge for vibrations and inspecting it after the repair work was completed.

Before the accident, Sivert and Hill were standing on the northwest side of the bridge. Hill had taken his position to inspect the repair work done close to that point. Sivert left Hill and walked east across the bridge on the westbound main tracks. At that time, about one-half mile away, a freight train was approaching

from the east going west on the westbound track. About ninety seconds elapsed from the time Sivert left Hill and the time the freight train started to pass over the bridge. Hill saw Sivert step off the westbound track into a space between the westbound and the eastbound main tracks. That was the last time Hill saw Sivert alive. When approximately one half of the freight train, consisting of between sixty and eighty cars, had passed over the bridge, an eastbound passenger train reached the bridge. This regularly scheduled passenger train passed over the bridge each day at approximately 7:25 A.M. Hill was then on the sloping fill, with his eyes leveled on the westbound tracks, to watch the vibrations under train traffic. He saw the wheels of the eastbound passenger train as he looked under the westbound freight train. The freight train was traveling between thirty and fifty miles per hour, while the passenger train was going about seventy-five miles per hour.

The approach to the bridge from west to east is on a gradual curve to the north. After the freight train had crossed the bridge, Hill testified the first he knew that Sivert had been struck and injured was when he saw "blood on a tie" about twenty feet east of the bridge on the eastbound main track. The blood was on the south edge of the tie. As he observed the blood he noticed a streak and disturbance in the fill made apparently by Sivert's body as it passed down over the fill. It was thrown to the right of the eastbound train and toward the bottom of the fill. The engineer of the passenger train said he saw "an object" fly off of the front part of the engine on the right-hand side; that it went to the south of the engine.

Sivert's body was found by Hill about 135 feet east of the bridge at the bottom of the fill.

At the time of the occurrence the engineer of the passenger train was seated on the right-hand seat box in the cab. The locomotive boiler was approximately 66 feet long. Seated as he was on the right-hand side of the engine cab and behind the boiler, the engineer could not see the rails ahead on the curve, hence he could not see the bridge until he was practically upon it.

The fireman on the passenger train said as they neared the bridge he saw a freight train approaching, and that, as was the custom and practice and under orders, he left his seat box on the left-hand side of the locomotive cab and went to the "middle of the deck" of the engine so as to get away from the left side of the locomotive as far as possible, until the freight train had passed.

Plaintiff contends that the fireman left his seat box because of the close clearance between the engine in which he was riding, and the box cars that were swaying, and because of the fact that there would not be more than two feet clearance.

None of the crew knew anything about Sivert being struck until the air brakes were applied and the engine came to a stop about a half mile east of the bridge.

It is undisputed in the evidence that no whistle or signal was sounded by the passenger train. The record contains evidence that with a freight train of sixty to eighty cars passing over the bridge that if a signal had been given, or a whistle had been blown, on the curve approaching the bridge, it could not have been heard because of the noise made by the passing freight train.

Safety rules of defendant provide:
Note to
Rule 3207:

"The term 'track' as used under this heading means the space between the rails and space within four feet outside each rail."

Rule 3205:

"When necessary to walk on main track, walk against current of traffic, and keep a sharp lookout in both directions for approaching trains. On approach of a train clear all tracks."

Rule 3207:

"Look in both directions for approaching engine, car or train before stepping on or crossing tracks. Walk straight across when possible to do so. Note: To comply with 3207, it will be necessary to turn the head in both directions before reaching track."

The width of the tracks between rail and rail is four feet, eight and one-half inches.

The overhang on the rail of the average railroad car, both passenger and freight cars, is two and one-half feet.

In this court appellant claims that the trial court erred:

(1) in denying its motions for a judgment notwithstanding the verdict and for a new trial;

(2) in the admission and rejection of evidence;

(3) in the giving and refusal to give certain instructions to the jury; and

(4) in not ordering that the title of the cause be amended because the plaintiff had remarried after her appointment as administratrix.

We have examined each of the suggested errors and will discuss them briefly.

■ Did the trial court err in refusing to sustain defendant's motion for a judgment notwithstanding the verdict? Under Rule 50 of the Federal Rules of Civil Procedure, 28 U.S.C.A. such a motion raises only the question of law as to whether or not there is any evidence which, if believed by the jury, would authorize a verdict against the party making the motion. Lloyd v. Thomas, 7 Cir., 195 F.2d 486–489, citing Montgomery Ward & Co. v. Duncan, 311 U.S. 243–250–251, 61 S.Ct. 189, 85 L.Ed. 147; Marsh v. Illinois Central R. R. Co., 5 Cir., 175 F.2d 498–499.

■ In considering defendant's motion for a judgment notwithstanding the verdict, the proof must be considered in the light most favorable to plaintiff.

In its argument on the motion, defendant has not presented the facts in this light, but rather in a way most favorable to itself. In her complaint plaintiff alleges five certain acts of negligence. One of the negligent acts charged defendant failed to provide and maintain a reasonably safe place in which decedent could perform his work. Another charged defendant with carelessly and negligently operating, maintaining and controlling an engine and cars at a high, dangerous and excessive rate of speed. The jury returned a general verdict. Evidence supporting any one of the five charges would be a sufficient basis to support the verdict.

■ In order to recover under the Federal Employers' Liability Act, it was incumbent upon plaintiff to prove that defendant was negligent and that such negligence was the proximate cause in whole or in part of the fatal accident. Plaintiff was required to present probative facts from which the negligence and the causal relation could reasonably be inferred. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29–32, 64 S.Ct. 409, 411, 88 L.Ed. 520. From the same case we find:

"'The essential requirement is that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.'"

Citing Galloway v. United States, 319 U.S. 372–395, 63 S.Ct. 1077, 87 L.Ed. 1458; Atchison, T. & S. F. Ry. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896.

Considering all the facts and circumstances in evidence, together with inferences drawn in the light most favorable to appellee, is there any evidence of negligence on the part of defendant which in whole or in part proximately contributed to the death of decedent?

Defendant contends there is none. A brief statement of the facts will be helpful.

On the day of the accident, the decedent was working on the bridge, and about to make an inspection, when a long freight train was passing over it, making a great deal of noise, thus creating a dangerous place in which to work. A witness for defendant testified, with trains moving on both tracks, there would be less than two feet clearance between the tracks. In his opening statement to the jury, counsel for defendant said: " * * * it is apparent there was no space in between the east and west bound tracks for any man to stand." Decedent had walked east on the westbound tracks before the freight train had reached the bridge and was last seen leaving the tracks, going into a space between the east and westbound tracks, where he could

have been going to make his inspection on the southeast corner of the bridge. There were open spaces between the ties on the tracks on the bridge, making movement by foot difficult. There were no ladders leading to the New York Central tracks below the bridge. His place of work at the time was one where he could not remain with trains moving on both east and west tracks at the same time. It was a heavily traveled bridge. In a period of twenty-four hours, fifty-five trains passed over it, some of which were high-speed passenger trains, others unscheduled freight trains.

With Hill stationed at the northwest corner of the westbound main track, some one should be at the southeast corner of the westbound main between the eastbound and westbound tracks while a train was passing over the bridge to complete the inspection under the strain of traffic.

The proof already detailed shows there was evidence from which it might be inferred that after Sivert stepped into the open space between the tracks before the freight train reached the bridge, he did so to take his position to make an inspection under traffic on the southeast corner of the bridge and while doing so, saw the passenger train approaching from the west and attempted to clear the eastbound track to avoid being hit by the passenger engine. That inference is not rendered unreasonable, because he was hit by the right front of the passenger engine and thrown to the right, as testified by the engineer of the passenger train. With trains passing on both tracks simultaneously, the clearance between the tracks, with the overhang on the cars, was not sufficient to permit him to remain with safety between the trains.

It appears that the decedent was exposed to the chance of harm in undertaking the completion of his hazardous work. With a passenger train traveling seventy-five miles an hour over the bridge, with the fireman inside the cab of the engine, away from his lookout position, and unable to see anything ahead, as the train sped on, and the engineer unable to see the bridge until he was on it, and unable to see decedent until his engine struck him, although

he had seen men around the bridge previously, we conclude that sufficient probative facts were shown by plaintiff to have the case presented to the jury.

Each of the parties cites a number of cases on the question as to when a case of this character should or should not be taken from the jury. We believe no useful purpose could be served in discussing or analyzing these cases, because each case must stand upon its own particular facts.

In a series of recent cases, the Supreme Court has undertaken to draw a sharp line between the function of a jury to pass upon issues of fact and the function of the court to determine whether there is substantial evidence to submit such issues to the jury. Penn. R. R. Co. v. Goldie, 6 Cir., 182 F.2d 9–11, citing Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54; 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; Bailey v. Central Vermont Ry. Co., 319 U.S. 350; 63 S.Ct. 1062, 87 L.Ed. 1444; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29; 64 S.Ct. 409, 88 L.Ed. 520; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916. All these cases involved the Federal Employers' Liability Act.

Under the facts and circumstances of this case, we believe the submission of the issues to the jury was warranted and the court should not substitute its conclusions for those of the jury. The motion for judgment notwithstanding the verdict was properly denied. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29–33, 64 S.Ct. 409, 88 L.Ed. 520.

The trial court did not abuse its discretion in denying defendant's motion for a new trial. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, and Pennsylvania R. R. Co. v. Goldie, 6 Cir., 182 F.2d 9.

Letters of administration were issued to plaintiff on May 26, 1948, by the Probate Court of Vinton County, Ohio, under the name of Kathryn Sivert. As such administratrix she filed this suit. After her appointment as administratrix plaintiff remarried in 1949. While a witness in this case she testified in part as follows:

"Q. Are you the plaintiff in this lawsuit? A. I am.

"Q. And are you the duly appointed administratrix? A. Yes.

"Mr. Costello: I object to that question, if your Honor please.

"The Court: Why?

"Mr. Costello: It is not the best evidence.

"Mr. Dooley: You want the letters?

."The Court: She may answer.

"By Mr. Dooley: Q. Are you the duly appointed administratrix of the estate of Charles Sivert, deceased? A. I am.

"Mr. Costello: I move the answer be stricken.

"The Court: Denied."

Rulings on the admissibility of evidence must normally be left to the sound discretion of the trial judge in actions under the Federal Employers' Liability Act. Lavender v. Kurn, 327 U.S. 645–654, 66 S.Ct. 740, 90 L.Ed. 916. The best proof of the appointment was the letters of administration. The trial court erred in not striking the answer, but it is not such an error as prejudiced appellant's rights. Defendant knew and admitted that plaintiff was the administratrix and went so far as to offer a written motion to amend the title of the cause to show her new married name. Where the actions and contentions of the defendant under the facts of this case are such as to plainly establish the fact that plaintiff is the duly appointed administratrix, beyond the possibility of successful dispute, thus eliminating any element of surprise, and a motion being made in this court filed with plaintiff's brief, to amend her complaint by attaching to paragraph 7 thereof as an exhibit, a copy of the letters of administration, should we consider such motion under the circumstances shown in this record? We think we should.

Should this court reverse the judgment and remand the cause, the suggested amendment could be allowed by the trial court. It would be mere ceremony to reverse the judgment and remit the purely formal making of the amendment to the District Court. The motion to amend comes as no surprise to defendant, nor would the granting of the motion cause any material injury to or affect any rights of the defendant. And it is clear that to remand the case for the purpose of having the trial court allow the suggested amendment would be mere ceremony, hence we shall therefore consider the complaint as amended, as suggested in the motion to conform to the facts of record. Norton v. Larney, 266 U.S. 511–516, 45 S.Ct. 145, 69 L.Ed. 413.

Other alleged errors in the admission of evidence are without merit.

Defendant urges error on the part of the trial court in giving certain instructions and in failing to give others.

We have examined and considered the instructions given by the trial court and those requested by defendant and not given, and conclude that the jury was properly instructed as to the rights and liabilities of the parties to the action and the law applicable thereto.

We have considered other errors urged by defendant and find they lack merit.

From the substantial evidence in this case we are convinced that the jury properly concluded that the negligence of the defendant was the efficient cause of the fatal accident.

Judgment affirmed.