**WILLITS**

v.

**YELLOW CAB CO.**

No. 11055.

United States Court of Appeals
Seventh Circuit.

July 1, 1954.

Rehearing Denied Aug. 9, 1954.

Wyatt Jacobs, William C. Wines, Julius Jesmer, Joseph B. Lederleitner, Chicago, Ill., for appellant.

James J. Magner, Thomas E. Deacy, Jr., Chicago, Ill., E. E. Lungren, Jr., Chicago, Ill., Taylor, Miller, Busch & Magner, Chicago, Ill., of counsel, for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

Plaintiff was injured while riding as a passenger for hire in defendant's taxicab when it became involved in a collision with a military vehicle [1] at the intersection of Cicero and Archer Avenues, Chicago, Illinois. For injuries sustained in this accident of May 27, 1952, plaintiff was awarded $35,000 damages against Yellow Cab Company, by a jury which accompanied its verdict, on June 26, 1953, with an answer to one interrogatory.

In his complaint, plaintiff joined the United States of America, its agent, servant or employee Joseph G. Leak, Jr.,[2] and Yellow Cab Company, as defendants. Prior to trial on the merits, and pursuant to stipulation approved by the court below, the United States and Joseph G. Leak, Jr. settled plaintiff's claims against them for $25,000 each. As an integral part of that settlement, plaintiff entered into two separate instruments, running to the United States of America and Joseph G. Leak, Jr., respectively, covenanting not to further prosecute or again sue these two defendants on account of this particular accident. Yellow Cab Company was not mentioned in either instrument. Pursuant to an order entered by the trial court predicated on the aforesaid stipulation and these agreements, plaintiff's suit was dismissed as to all defendants except Yellow Cab Company; the cause proceeding to trial on issues between this latter defendant and plaintiff.

The two instruments, under which the settlement was closed, were not introduced in evidence below and are not part of this record save as two unexecuted forms affixed to the stipulation of plaintiff and those two defendants who were dismissed out of this proceeding. Not until September 25, 1953, when the defendant Yellow Cab Company filed an amendment to "any and all of its pleadings" did it interpose plaintiff's settlements as a defense that the joint tort feasors had been released. After the jury's verdict was affirmed June 25, 1953, defendant obtained leave to file its amended motion for a new trial and for judgment notwithstanding the verdict; both motions were subsequently filed July 23, 1953, followed two days later by a motion, which was allowed, to amend this defendant's pleadings to conform to the proof. Thereafter, Yellow Cab was permitted to amend its motion for a new trial setting forth in the alternative,

---

1. A 2½ ton G. I. Heavy Duty G.M.C. 656 military truck, carrying a ¼ ton jeep and other equipment. This vehicle was second in a five-truck convoy enroute from Springfield, Illinois to an armory in Chicago.

2. Sergeant in the Illinois National Guard.

motions for judgment notwithstanding the verdict or in arrest of judgment. The claim of release was then raised in Yellow Cab's motion for relief from judgment under Fed.Rules Civ.Proc. 60(b) (5), 28 U.S.C.A., in its amended motion for a new trial, and in an amendment to the amendment for a new trial. These several motions were overruled. Yellow Cab brings the final judgment entered on the jury's verdict and the trial court's orders denying defendant's post trial motions for new trial, judgment notwithstanding the verdict, arrest of judgment and relief from judgment before us for review.

■ Yellow Cab's defense of release was not only tardily raised, but was apparently an afterthought. During oral arguments counsel for the defendant conceded that the case was not tried below on the theory of release. Coupling tardiness with the absence in evidence of the very instruments on which this defendant erects its claim, and seeks our interpretation, goes far toward cutting ground from under the point urged by Yellow Cab. For these reasons we think it unnecessary to further treat any of the contentions sponsored by Yellow Cab concerning that facet of defendant's appeal. We do, however, find that the trial judge acted correctly in denying defendant's motion for relief from judgment under Fed.Rules Civ.Proc. 60(b) (5), 28 U.S.C.A. By that motion, Yellow Cab sought to be relieved from the final judgment because " * * * (5) the judgment has been * * * released, or discharged * * * ," but under the state of this record and against the background of matters already noted, we think defendant waived such a defense or right for relief under the Rule.

■ This brings us to numerous other points, urged by Yellow Cab, as demonstrative of alleged errors committed below, and which can be divided into four general categories: (i) evidentiary questions with alleged prejudice to defendant as derivative factors, (ii) denial of various motions directed at the quality and quantum of evidence, (iii) con-

tentions generated by certain instructions given to the jury, and (iv) phases of the closing argument by counsel for plaintiff. But after scrutinizing the entire record before us we discern no sound legal reason, or warrant, to annul this jury's verdict. Defendant's contentions of prejudice through certain testimony are tenuous ones. For though we are not concerned with weight of testimony or credibility of witnesses, Edwards v. Baltimore & O. R. Co., 7 Cir.1942, 131 F.2d 366, we sifted and tested defendant's assertions which were allied with the parol evidence given by particular witnesses.

Several motions filed by defendant, bring into play Rule 50 of the Federal Rules of Civil Procedure, 28 U.S.C.A., prescribing the procedural program for Federal courts. Johnson v. New York, New Haven & Hartford R. Co., 1952, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77. Evaluating those errors asserted by defendant, in order to ascertain their efficacy, substantiality and possible existence of prejudice, we note that few automobile tort cases yield a tidy mosaic of evidence on all issues; congruency being the infrequent element. By only narrating a distilled version of the facts traced on this record we have not ignored nuances manifested by the testimony reviewed.

■ Contact and impact between the army vehicle and defendant's taxicab occurred well within the intersectional perimeter formed by Cicero Avenue running north and south and Archer Avenue traversing it in a northeast-southwest diagonal. Defendant's cab, proceeding southwest on Archer, entered this intersection on a green signal light, to make a turn south on Cicero Avenue. Several witnesses testified as to the northeast bound approach of the army vehicle traveling on Archer Avenue. Drivers of both vehicles involved testified, as did plaintiff, various occurrence witnesses and police officers. Medical evidence sponsored by six doctors was introduced by plaintiff. Considerable space in defendant's brief is devoted to argument

concerning items which Yellow Cab variously designates as "12 conflicts in the evidence" and "17 impeachments and contradictions of the plaintiff's witnesses." Not only are these arguments unsatisfying, but we think a fairer reading of this record demonstrates a need for the jury's functions. Sweeney v. Bonacci, 3 Cir., 1949, 173 F.2d 541, 544. This phase of defendant's argument buttresses a well-settled principle applicable here: "Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury." Gunning v. Cooley, 1930, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720. However, the sympathetic fusion between "highly conflicting facts" and freedom from "substantial prejudicial errors" suggested by Yellow Cab is of no avail here because this record simply does not reflect such errors.

■■ Our description in MacKay v. Costigan, 7 Cir., 1950, 179 F.2d 125, 127, of the close resemblance and effect, between motions for a directed verdict and for judgment notwithstanding the verdict is pertinent:

"*  *  * they present only **a** question of law as to whether or not, when all of the evidence with reasonable inferences therefrom is considered in its aspect most favorable to the plaintiffs, there is a total failure or lack of evidence to prove any necessary element of the plaintiff's case."

We find no such deficiencies present here, quite the contrary it being our opinion that as a matter of law plaintiff made a case. Nor was it error for the trial court to deny defendant's motion for a judg- ment notwithstanding the verdict. Sivert v. Pennsylvania R. Co., 7 Cir., 1952, 197 F.2d 371. This verdict is properly supported by, and not contrary to, the evidence. Defendant had a fair trial and damages levied against it are not, in our opinion, excessive. The motion for a new trial was rightly disposed of below. Garrison v. United States, 4 Cir., 1932, 62 F.2d 41.

■ In taking up defendant's arguments surrounding jury instruction numbered seven, challenged by Yellow Cab, it is well to recall that when this 1952 accident occurred, traffic lights were operating at the site. Giving plaintiff's instruction seven, supplied the jury with a verbatim reading of § 69 from the Uniform Act Regulating Traffic on Highways,[3] approved July 9, 1935, as amended. When defense counsel was seasonably informed, (Fed.Rules Civ. Proc. 51, 28 U.S.C.A.), by the trial judge that this instruction was to be given, a colloquy [4] ensued, during which counsel stated the inapplicability of § 69, supra, to intersections equipped with electric traffic signal lights. But upon inquiry by the trial judge, e. g.: "What is the provision of the statute where there are traffic lights," defense counsel's failure to directly reply thereto, deprived the trial court of the full grounds and precise nature of defendant's objection. Palmer v. Hoffman, 1943, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645.

Not until defendant reached this court did it spell out the statutory argument proposed in opposition to instruction numbered seven, citing specific and particular sections of the Uniform Act Regulating Traffic on Highways, supra.

3. Ill.Rev.Stat.1951, chapter 95½, par. 166, in effect at the time of this occurrence.

4. Illustrative of this situation are these excerpts from part of the discussion below:

"Mr. Jacobs (defense counsel): Now, the question is, how does this statute have any application to a situation where there are traffic lights?

"The Court: Well, suppose he came up there and the light was green and he was coming up to the intersection, and he was going to make a turn?

"Mr. Jacobs: Yes?

"The Court: Under this statute, he must stop before he makes the turn to see what oncoming traffic is going in the opposite direction and also ahead.

"Mr. Jacobs: That is right.

"The Court: I think we will give this one."

Failure of defense counsel to comply with the requirement of "* * * stating distinctly the matter to which he objects and the grounds of his objection * * *" under Fed.Rules Civ.Proc. 51, 28 U.S.C.A., is brought into sharp relief by simply comparing his statements, about that instruction, to the trial judge with the same point as developed in Yellow Cab's brief and argument. It is the complete disparity in statutory citations and not formalities of language and style to which we make reference.

We are also aware that during his closing argument to the jury concerning § 69, supra, plaintiff's counsel flatly stated: "It does not say anything about traffic lights at all." Of course that is an accurate observation when examined only within the framework of § 69, supra, but defendant did not request any instructions on other sections of the Act.

■ Turning now to what is, perhaps, a more sensitive area in this record, yet not constituting reversible error, namely defendant's objection to arguments made by plaintiff's counsel concerning the one interrogatory put to this jury. Westbrook v. Chicago & Northwestern Railway Company, 1928, 248 Ill. App. 446, heavily relied on by defendant is not persuasive [5] here because it rests upon an argument, to a jury, in which counsel explained and advised that jury how to answer two [6] special interrogatories. Since there were four counts in that complaint, the Westbrook jury had multiple choices and combinations of findings on several counts coupled with accompanying responses to the special interrogatories, viz. a finding on count one and an answer to one interrogatory in the negative, et seq. We think the Westbrook case, supra, for these reasons, is inapposite here. Moreover, we think,

that the impact, if any there was, of that portion of plaintiff's argument, attacked by defendant to have been cured by the adequate charge and instructions delivered by the trial judge.

No reversible errors having been found in this record, nor any merit in other points raised by defendant, whether discussed in this opinion or not, the judgment below must be affirmed.

Affirmed.

SCHNACKENBERG, Circuit Judge. (dissenting).

In my opinion, the statements by plaintiff's counsel, Mr. Deacy, during his closing argument, regarding the special interrogatory put to the jury, constituted reversible error. Here is the interrogatory:

Was the driver of the defendant's motor vehicle, Herman Malacoff, guilty of negligence as defined in these instructions, which proximately contributed to cause the occurrence in question?

The record shows the following proceedings during said closing argument:

"Mr. Deacy: * * * Now, there is a special interrogatory in respect to the negligence of Mr. Malacoff, which, of course, is the reason for the liability of the Yellow Cab Company. To make your verdict consistent,—

"Mr. Jacobs: To this line of argument I object, your Honor.

"Mr. Deacy: You made the same argument.

"Mr. Jacobs: I did not.

"Mr. Deacy: I want to point it out to you.

"The Court: What is your objection?

---

5. We attach some significance to the Illinois Appellate Court's statement, 248 Ill.App. 446, 449: "It was practically conceded by counsel for appellee in the oral argument and also in his printed brief that his remarks in this connection were not proper * * *"

6. In substance these were:
  1. "* * * Whether the engineer of the train in question was guilty of such negligence as to indicate a total disregard of consequences or for the safety and lives of others. 2. * * * Whether such conduct was the proximate cause of Westbrook's death." 248 Ill.App. 448.

"Mr. Jacobs: My objection is he cannot explain to the jury about the interrogatories.

"The Court: Why not? Somebody ought to explain it. Certainly, the objection is overruled.

"Mr. Jacobs: I would like to go here, your Honor.

"The Court: All right, here. (Whereupon the following took place outside of the hearing of the jury.)

"Mr. Jacobs: I believe it is in error to explain that to the jury because they would always return a verdict in favor of the defendant (sic). If he explains it to the jury, the courts in Illinois have held that that is an error.

"Mr. Deacy: You have to explain it to the jury.

"The Court: I will overrule the objection. (Whereupon the following took place in the presence and hearing of the jury.)

"The Court: Go ahead with your argument.

"Mr. Deacy: Ladies and Gentlemen of the Jury, this interrogatory should be answered, 'Yes,' consistent with your verdict in favor of Mr. Willits."

The record also shows that although defendant's counsel, Mr. Jacobs, made reference to the interrogatory in his argument, he in no way attempted to explain *its effect*. He merely said:

" * * * The Court will have a special interrogatory asking you, was Mr. Malacoff guilty of negligence, and I ask you in all fairness to him and to us and to justice to us, so that you can say when you leave here, 'I believe in the system of trial by jury, I know what I did and what the other eleven jurors sitting with me tried to do was to give everybody a fair hearing'."

The court, in its instructions to the jury, made no reference to this interrogatory except the following: "Now, there are two forms of verdict in this case and one special interrogatory. This is the interrogatory: (The court then read it.) You will answer that either 'Yes' or 'No,' and that will be signed by the twelve jurors, and then you will sign the verdict."

The jury answered the interrogatory "Yes", and returned a general verdict in favor of plaintiff.

Defendant contends, and I must agree, that it was prejudicial error to permit plaintiff's counsel, over objection, to explain to the jury the effect of the interrogatory and its answer thereto.

Rule 49(b) of the Federal Rules of Civil Procedure provides:

"The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court *shall* give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict". (Emphasis supplied.)

In the case at bar, the court gave no explanation to enable the jury to make answer to the interrogatory. He merely directed them to answer "Yes" or "No". Moreover, during the closing argument for plaintiff, by overruling defendant's objection and telling plaintiff's counsel to go ahead with his argument which dealt with making the answer to the interrogatory consistent with the general verdict, the court clearly indicated to the jury that counsel's explanation on this point was the correct explanation. The court had already remarked in the jury's presence that "Somebody ought to explain it". I cannot assume that this error did not influence the jury.

The real purpose of a special interrogatory is to require the jury's answer as to one or more issues of ultimate fact. To that extent it then becomes the exclusive province of the court to determine whether the general verdict is in harmony with the jury's own interpreta-

tion of the evidence as revealed by its answer to the interrogatory. Either party has a right to submit a special interrogatory calling for a finding as to a proper issue of fact. Either party has a right to argue to the jury the evidence in the record and to indicate therefrom whether the answer should be "Yes" or "No". Neither has a right to ignore the evidence and tell the jury that its answer should be "Yes" (or "No") solely because the *effect* of that answer will be consistent with a certain general verdict. The whole purpose of a special interrogatory is defeated if the jury is in effect told that its general verdict will stand only if its answer to the special interrogatory is consistent therewith. In this case, it is not improbable that the jury may have answered the special interrogatory as it did in order to protect the general verdict, rather than as the result of a consideration of the evidence as to Malacoff's alleged negligence.

In Westbrook v. Chicago & Northwestern Railway Company, 248 Ill.App. 446, at page 450 the court said:

> "We think the statements of counsel and the overruling of the objections thereto by the court were prejudicial to the rights of appellant. It is improper for counsel to ask the jury to answer the special interrogatories so that they may agree with their general verdict or to discuss the legal effect of their answers to special interrogatories or their bearing on their general verdict. (Southern Indiana R. Co. v. Fine, 163 Ind. 617 [72 N.E. 589]; Snider v. Washington Water Power Co., 66 Wash. 598 [120 P. 88].) It can be readily seen that the very purpose of submitting special interrogatories can be destroyed by such discussion and we are in thorough accord with the authorities cited on this point."

There is no real basis on which the Westbrook case can be distinguished from the case at bar. The mere fact that in the Westbrook case there were two special interrogatories and four counts in the complaint, thus giving the jury multiple choices and combinations of findings, to me presents no logical ground for distinction. Nor can that case be distinguished on the ground that counsel there practically conceded that his remarks in this connection were not proper. That fact only shows that the court's opinion is fortified by the views of counsel on both sides. The reasoning of the opinion in the Westbrook case is just as applicable under Federal Rule 49(b) as it is under Illinois law.

I would reverse and remand for a new trial.