JOHNSON, ADMINISTRATRIX, *v.* NEW YORK,
NEW HAVEN & HARTFORD RAILROAD CO.

No. 40.   Argued October 23–24, 1952.—Decided November 17, 1952.

*Jacquin Frank* argued the cause for petitioner. With him on the brief was *Herman B. Gerringer*.

*Robert M. Peet* argued the cause for respondent. With him on the brief was *Edward R. Brumley*.

MR. JUSTICE BLACK delivered the opinion of the Court.

This case raises questions concerning the power of a Court of Appeals to render judgment for a defendant instead of merely ordering a new trial after it has set aside a jury verdict and trial court judgment for a plaintiff.

The petitioner sued the respondent railroad under the Jones Act, 46 U. S. C. § 688, for wrongful death of her husband. When the evidence was all in, the railroad moved to dismiss the complaint and also asked for a directed verdict in its favor on the grounds that no negligence had been proven and that the deceased had been responsible for his own death. The trial court reserved decision on the motion, submitted the case to the jury, a verdict of $20,000 was returned for petitioner, and judgment was entered on the verdict. Within ten days after reception of the verdict the railroad moved to have the verdict set aside on the ground that it was excessive, contrary to the law, to the evidence, to the weight of the evidence. More than two months later this motion was denied; in the same order denying that motion the court also denied the pre-verdict motions for dismissal and for a directed verdict on which action had been reserved prior to verdict. Holding that the motion for a directed verdict should have been granted, the Court of Appeals reversed. 194 F. 2d 194. Both parties agree that this reversal requires the District Court to enter judgment for the railroad notwithstanding the verdict,

thereby depriving petitioner of another trial. Whether the Court of Appeals could direct such a judgment consistently with Rule 50 (b) of the Federal Rules of Civil Procedure[1] is the single question we granted certiorari to review. 343 U. S. 975.

On several recent occasions we have considered Rule 50 (b). We have said that in the absence of a motion for judgment notwithstanding the verdict made in the trial court within ten days after reception of a verdict the rule forbids the trial judge or an appellate court to enter such a judgment. *Cone* v. *West Virginia Pulp & Paper Co.,* 330 U. S. 212. We repeated that construction of the rule in *Globe Liquor Co.* v. *San Roman,* 332 U. S. 571, and reemphasized it in *Fountain* v. *Filson,* 336 U. S. 681.

Although this respondent made several motions it did not as the rule requires move within ten days after verdict "to have judgment entered in accordance with his [its] motion for a directed verdict." We are told, however, in respondent's brief that its motion to set aside the verdict "was intended to be a motion for judgment in its favor or for a new trial" and that "[o]bviously respondent did not merely want the verdict to be set aside but wanted the relief that invariably follows such a setting aside on the grounds urged: a judgment in its favor or a new

---

[1] "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. . . ."

trial." The defect in this argument is that respondent's motions cannot be measured by its unexpressed intention or wants. Neither the trial judge nor the Court of Appeals appears to have treated the motion to set aside the verdict as asking for anything but that. And surely petitioner is not to have her opportunity to remedy any shortcomings in her case jeopardized by a failure to fathom the unspoken hopes of respondent's counsel. Respondent's motion should be treated as nothing but what it actually was, one to set aside the verdict—not one to enter judgment notwithstanding the verdict.

Respondent separately argues that a trial judge's express reservation of decision on motion for a directed verdict relieves a party from any duty whatever under 50 (b) to make a motion for judgment after verdict. This contention not only flies in the teeth of the rule's unambiguous language but if sustained would undermine safeguards for litigants some of which have been pointed out in prior cases. The rule carefully sets out the steps and procedures to be followed by the parties as a prerequisite to entry of judgments notwithstanding an adverse jury verdict. *Montgomery Ward & Co.* v. *Duncan,* 311 U. S. 243, 250. It was adopted following confusion in this field brought about in part by three cases decided by this Court, *Slocum* v. *New York Life Ins. Co.,* 228 U. S. 364; *Baltimore & Carolina Line, Inc.* v. *Redman,* 295 U. S. 654; and *Aetna Ins. Co.* v. *Kennedy,* 301 U. S. 389. The *Slocum* case was understood to hold that the Seventh Amendment forbade United States courts to enter judgments in favor of one party after jury verdict in favor of the other. The *Redman* case tried in New York held that the Seventh Amendment did not forbid entry of judgment notwithstanding a verdict where, prior to the verdict, the trial judge, following New York procedure, had expressly reserved his decision on a motion for a directed verdict. The New York District Court was au-

52

thorized to follow this state practice because of the Conformity Act, R. S. (1878) § 914. Thus the *Redman* case did not purport to adopt New York procedure for the general guidance of federal courts. Later the *Kennedy* case cast doubt on the *Redman* holding, at least as to its scope. In the *Kennedy* case plaintiff's request for directed verdict had not been followed by a timely motion for judgment notwithstanding the verdict as required by Pennsylvania law. Failure to conform to this Pennsylvania practice was a reason given by this Court for finding lack of power in the District Court to enter judgment contrary to the verdict.[2]

Rule 50 (b) was designed to provide a precise plan to end the prevailing confusion about directed verdicts and motions for judgments notwithstanding verdicts. State procedure was no longer to control federal courts as it had in the *Redman* and *Kennedy* cases. Federal courts were to be guided by this new rule, which provided its own exclusive procedural program. It rejected the New York procedure applied in the *Redman* case, which permitted judgment to be set aside even though no motion to do so had been filed after verdict. Instead it approached more closely the Pennsylvania rule, relied

---

[2] The controlling Pennsylvania statute then was Pa. Laws 1905, No. 198. Like Rule 50 (b) it provided for a timely motion for judgment notwithstanding the verdict. The binding duty to do this was explained by the Supreme Court of Pennsylvania as follows, in a case relied on by this Court in the *Kennedy* case:

"To secure the benefit of that act its terms must be complied with, that is, the refusal of the request for binding instructions must be followed by a proper motion made in due time: Pyle v. Finnessy, 275 Pa. 54, 57. Here the record as duly certified discloses no such motion nor any evidence that one was made. True, the question of the absence of such motion was not raised in the lower court but, being one of jurisdiction, it cannot be ignored. It follows that as the record stands the judgment cannot be sustained." *West* v. *Manatawny Mut. F. & S. Ins. Co.*, 277 Pa. 102, 104, 120 A. 763, 764.

on in the *Kennedy* case, under which judgments contrary to verdicts would not be awarded in the absence of specific timely motions for them. But Rule 50 (b) departed from the New York and Pennsylvania procedures by making it wholly unnecessary for a judge to make an express reservation of his decision on a motion for directed verdict. The rule itself made the reservation automatic. A court is always "deemed to have submitted the action to the jury subject to a later determination" of the right to a directed verdict if a motion for judgment notwithstanding the verdict is made "within 10 days after the reception of a verdict . . . ." This requirement of a timely application for judgment after verdict is not an idle motion. This verdict solves factual questions against the post-verdict movant and thus emphasizes the importance of the legal issues. The movant can also ask for a new trial either for errors of law or on discretionary grounds. The requirement for timely motion after verdict is thus an essential part of the rule, firmly grounded in principles of fairness. See *Cone v. West Virginia Pulp & Paper Co., supra,* at 217–218. Poor support for its abandonment would be afforded by the mere fact that a judge makes an express reservation of a decision which the rule reserves regardless of what the judge does.

Rule 50 (b) as written and as construed by us is not difficult to understand or to observe. Rewriting the rule to fit counsel's unexpressed wants and intentions would make it easy to reintroduce the same type of confusion and uncertainty the rule was adopted to end. In 1946 this Court was asked to adopt an amendment to the rule which would have given appellate courts power to enter judgments for parties who, like this respondent, had made no timely motion for judgment notwithstanding the verdict. We did not adopt the amendment then. 5 Moore, Federal Practice (2d ed. 1951), ¶¶ 50.01 [7], 50.01 [9], 50.11.

No sufficiently persuasive reasons are presented why we should do so now under the guise of interpretation.

Respondent made a motion to set aside the verdict and for new trial within the time required by Rule 50 (b). It failed to comply with permission given by 50 (b) to move for judgment *n. o. v.* after the verdict. In this situation respondent is entitled only to a new trial, not to a judgment in its favor. The judgment of the Court of Appeals is vacated and the cause is remanded to it for further proceedings consistent with this opinion.[3]

*It is so ordered.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE JACKSON, MR. JUSTICE BURTON and MR. JUSTICE MINTON join, dissenting.

If the Court's opinion in this case merely disposed of a particular litigation by finding error in a decision of the

---

[3] The writer of this opinion and THE CHIEF JUSTICE are not convinced that the Court of Appeals attempted to direct a verdict for the railroad. What the court said was: "In our opinion the motion for a directed verdict should have been granted. Accordingly the judgment is reversed." But holding that a directed verdict should have been given cannot be the equivalent of a court's entry of judgment for defendant notwithstanding a jury verdict for plaintiff. For after setting aside a verdict as authorized by Rule 50 (b), a trial judge may "either" enter a judgment contrary to the verdict "or" order a new trial. The rule thereby requires the exercise of an informed judicial discretion as a condition precedent to a choice between these two alternatives. *Cone* v. *West Virginia Pulp & Paper Co., supra,* at 215. And this discretion must be exercised by the court, not by its clerk. The Court was told during oral argument that it is the practice in the Second Circuit for the clerk to include in his mandate a direction to the district court to have a judgment entered in favor of a party notwithstanding the verdict where the court reverses a district court's refusal to direct a verdict. A rule of practice of this kind under which a court clerk's mandate would automatically direct entry of a judgment for defendant after court reversal of a plaintiff's judgment could not possibly be the result of

Court of Appeals that a judgment be entered for the defendant in a negligence suit, an expression of dissent, let alone a dissenting opinion, would not be justified. If that were all there were to it, neither would the Court have been justified in granting the petition for certiorari. The same considerations which made the case one of general importance for review here make it appropriate to spell out the grounds of dissent.

Not the least important business of this Court is to guide the lower courts and the Bar in the effective and economical conduct of litigation. That is what is involved in this case. The immediate issue is the construction of one of the important Rules of Civil Procedure. That construction in turn depends upon our basic attitude toward those Rules—whether we take their force to lie in their very words, treating them as talismanic formulas, or whether we believe they are to be applied as rational

the kind of judicial discretion directed by Rule 50 (b). We are not willing to attribute such a practice to the Second Circuit. The Second Circuit's Rules of Practice do not prescribe a practice of that kind. See F. C. A., Rules, c. 5, pp. 96–103, 16 S. Ct. Dig. 143–169, U. S. Dig., Court Rules (L. Ed.), pp. 573–589. Nor do the rules of any other circuit. See F. C. A., Rules, cc. 4–13, pp. 84–194, 16 S. Ct. Dig. 107–523, U. S. Dig., Court Rules (L. Ed.), pp. 545–827. No case has been found that indicates such a practice by the Second or any other Circuit. Since adoption of Rule 50 (b) in 1938, courts of appeals wishing to enter or direct judgment have said so in clear, simple and mandatory language. As to the Second Circuit, see *e. g., Venides* v. *United Greek Shipowners Corp.*, 168 F. 2d 681; *Brennan* v. *B. & O. R. Co.*, 115 F. 2d 555; *Williams* v. *New Jersey-N. Y. Transit Co.*, 113 F. 2d 649; *Conway* v. *O'Brien*, 111 F. 2d 611. The Fifth Circuit emphatically pointed out that mere reversal and remand for proceedings consistent with the opinion did not authorize a trial court to enter judgment notwithstanding the verdict; entry of such a judgment was only to be granted as of discretion and after a hearing. *Fleniken* v. *Great American Indemnity Co.*, 142 F. 2d 938; see also *In re Mutual Life Ins. Co. of New York*, 188 F. 2d 424, 425–426.

instruments for doing justice between man and man in cases coming before the federal courts.

Our concern is with Rule 50 (b) of the Federal Rules of Civil Procedure.[1] The Rules became effective on September 16, 1938. Two years later, in *Montgomery Ward & Co.* v. *Duncan,* 311 U. S. 243, this Court was called upon to determine the appropriate procedure under Rule 50 (b). To do so, the Court had to consider the experience that led to the promulgation of the Rule. Its aim was to speed litigation without prejudicing the legitimate interests of litigants; to see to it that full and fair consideration is given to the issues litigants raise but that litigation does not become a socially wasteful game. The unanimous opinion of the Court in the *Montgomery Ward* case gave this guiding direction: ". . . the courts should so administer the rule as to accomplish all that is permissible under its terms." 311 U. S., at 253. This attitude was made specific by the statement that if the trial judge rules, as he properly

---

[1] "(b) RESERVATION OF DECISION ON MOTION. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

should, on alternative motions for judgment *n. o. v.* and for a new trial, and denies them both, the appellate court may reverse the former action and direct the entry of judgment *n. o. v.* 311 U. S., at 254.

Subsequent to *Montgomery Ward & Co.* v. *Duncan, supra,* three cases came here in which we reversed because Courts of Appeals disregarded the procedure outlined in that case in one significant respect. The Courts of Appeals directed the entry of judgments *n. o. v.* although no motions for such judgments had been made in the trial courts. *Cone* v. *West Virginia Pulp & Paper Co.,* 330 U. S. 212; *Globe Liquor Co.* v. *San Roman,* 332 U. S. 571; *Fountain* v. *Filson,* 336 U. S. 681. Our decisions do not suggest, however, that the party in whose favor a Court of Appeals directs a judgment *n. o. v.* is required to use a ritualistic formula in the District Court. The only relevant inquiry in this case, therefore, is whether the fair meaning of the proceedings after a verdict was rendered in fact constituted disposition of a motion to enter judgment *n. o. v.* This is so unless Rule 50 (b) commands that after the reception of a verdict a party must not only "move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict," but must do so by a particular form of words. The Rule does not require this. Nothing in the Rule, either by its terms or its origin, requires some abracadabra of obedience to it.

A comparison of the facts in the *Cone, Globe* and *Fountain* cases with those in this case leaves no doubt that this case has nothing in common with *Cone, Globe* and *Fountain.* A tabular analysis of the procedural facts in all four cases is appended, *post,* p. 63. There were no motions *n. o. v.* in *Cone, Globe* and *Fountain,* and the failure to make them resulted in a prejudice to the losing

parties in the Courts of Appeals in those three cases which is wholly wanting here.[2]

In each of the three earlier cases the decision of the Court of Appeals either applied to the facts a legal theory other than the one on which the parties proceeded in the trial court, or for the first time assigned decisive importance to the choice by the losing party of a legal theory on which to claim or resist recovery. *Cone* was tried on the assumption that proof of constructive possession would sustain the cause of action; the Court of Appeals definitively disposed of the litigation by holding that actual possession must be proved. In *Globe* the plaintiff secured a verdict on the basis of an express warranty in a sale; the Court of Appeals held that he had failed in this and directed the entry of a judgment for the seller, even though on a new trial, which alone was what the seller had asked, it would have been open for the buyer, with the aid of additional evidence, to succeed on proof of an implied warranty. In *Fountain* the plaintiff sued to have himself declared the beneficiary of a resulting

---

[2] The post-verdict motions in *Cone* and *Globe* (there was none in *Fountain*) specifically prayed for a new trial, and the grounds they recited went wholly to the issue of whether or not a new trial would be proper. The *Cone* motion relied on newly discovered evidence. Moreover, it was much too late to pray for judgment *n. o. v.* under Rule 50 (b). In *Globe* the motion claimed error in rulings on evidence and in taking the case from the jury. The motion in our case, timely under Rule 50 (b), was "to set aside the verdict" on grounds which supported both judgment *n. o. v.* and the grant of a new trial. Having heard argument and requested briefs and the trial transcript, the judge held that the evidence permitted recovery. It could not do so, of course, if it were insufficient in law. Nor should the fact be forgotten that the judge was dealing with arguments which had been presented to him before on a motion for a directed verdict, as to which he had reserved decision. Motions for directed verdict had been made by defendants in *Cone* and *Globe* as well, but they had been expressly denied before the verdict.

trust in certain realty. While the Court of Appeals agreed with the District Court that New Jersey law precluded the imposition of such a resulting trust, it directed the District Court to enter a personal money judgment for the plaintiff. In all three cases we held that the District Court never had opportunity to exercise the discretion which would have been open to it had the grounds on which the litigation went off in the Court of Appeals been relied on before the District Court in an appropriate motion.

In this case there was no such deviation from the trial issues. The case went to the jury on the issues of defendant's negligence in departing from an alleged common custom, and of causation. These issues were duly pressed before the trial judge after verdict. The case went against the petitioner in the Court of Appeals on one of them. In contrast to the situation in the other three cases no possible claim of surprise can here find nourishment. The *Cone, Globe* and *Fountain* cases, being decisively different from this case, cannot govern it.

Let me set out, side by side, so much as is pertinent in the motion made after the verdict in the *Montgomery Ward* case and the motion made in this case.

### Montgomery Ward

Comes the defendant, Montgomery Ward & Company, and files its motion praying that the jury's verdict herein and the judgment rendered and entered thereon be set aside and judgment entered herein for the defendant notwithstanding the verdict, and its motion for a new trial in the alternative, and as grounds therefor states:

### Johnson

On behalf of the defendant, The New York, New Haven & Hartford Railroad, I move to set aside the verdict on the ground

60

A. . . . Motion . . . to enter judgment . . . .

1. That the verdict is contrary to the law. — that it is contrary to the law

2. That the verdict is contrary to the evidence. — and contrary to the evidence

3. That the verdict is contrary to the law and evidence.

. . . . .

8. That the defendant has failed to prove by a preponderance of the evidence . . . . — and contrary to the weight of the evidence

B. . . . motion for a new trial: [Specifications 1–8 same as above.]

9. That the damages found by the jury and the verdict based thereon were excessive.[3] — and excessive.

The difference between the two motions is nil. One was written and formally labelled and detailed. While the other was oral, it was cast in form familiar to New York practitioners and its meaning was no less clear. The District Judge's action demonstrates this. But under the Court's holding it is no longer sufficient to move for a directed verdict and then, within the time provided by the Rule, ask the trial judge either to grant judgment or a new trial. The Court so holds even though the trial judge already has expressly stated he has reserved for his consideration at that time (after verdict) the very issue which a motion for judgment *n. o. v.* would repeat. The

---

[3] The specifications which I do not quote do not add materially to the motion for judgment *n. o. v.* in the *Montgomery Ward* case.

obvious, which is left unsaid in colloquies between counsel and the court, must now be spoken. The redundant, omitted out of respect for a judge's intelligence and professional competence, must always be spelled out. The parties must be sure to indulge the ancient weakness of the law for stylized repetition, and it is necessary that the judge answer the same question twice before his answer is to be recognized. In this way do we conduce "to the efficiency and the economy of the administration of justice." Federal Rules of Civil Procedure, Proceedings of the Institute at Washington, D. C. and of the Symposium in New York City, 87 (1938) (Chesnut, J.).

If on that fateful Friday the 13th, in April, 1951, sometime shortly after 10:30 in the morning when the jury's verdict was opened, the defendant had prefaced his argument by saying, "Your Honor, before addressing myself to my pending motion for directed verdict, on which your Honor reserved decision, and which of course now necessarily is a motion for judgment *n. o. v.*, I first want to renew that motion," he would have avoided today's decision against him, although he would not have added one jot of information to that of counsel for the plaintiff or of the judge regarding the issues before the court for decision. To require this is to make Rule 50 (b) read (added language in italics):

> "Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside. *Such a motion will be treated as a motion to have judgment entered in accordance with his motion for a directed verdict if he repeats the motion for directed verdict or states to the court that he now makes a 'motion for judgment notwithstanding the verdict.'*"

The Federal Rules of Civil Procedure are the product of the progress of centuries from the medieval court-room contest—a thinly disguised version of trial by combat—to modern litigation. "Procedure is the means; full, equal and exact enforcement of substantive law is the end." Pound, The Etiquette of Justice, 3 Proceedings Neb. St. Bar Assn. 231 (1909). This basic consideration underlies the Rules; with it in mind we construed Rule 50 (b) in the *Montgomery Ward* case.

It has been said of the great Baron Parke: "His fault was an almost superstitious reverence for the dark technicalities of special pleading, and the reforms introduced by the Common Law Procedure Acts of 1854 and 1855 occasioned his resignation." (Sir James Parke, 15 D. N. B. 226.)

Baron Parke despaired prematurely. If he had waited another hundred years this Court today would have vindicated his belief that judges must be imprisoned in technicalities of their own devising, that obedience to lifeless formality is the way to justice.

[For dissenting opinion of MR. JUSTICE MINTON, see *post,* p. 65.]

|  | *Cone* v. *W. Va. P. & P. Co.* 330 U. S. 212 | *Globe Co.* v. *San Roman* 332 U. S. 571 | *Fountain* v. *Filson* 336 U. S. 681 | *Johnson* v. *N. Y., etc. Co.* |
|---|---|---|---|---|
| CAUSE OF ACTION. | Trespass. | Contract. | Resulting trust. | Wrongful death—Jones Act. |
| TRIAL ISSUES. | Title and possession. | Existence of contract and express warranty. | Existence of resulting trust under deed and option. | Existence of common custom, and causation. |
| PRE-VERDICT MOTIONS. | For directed verdict, by defendant. Denied. | For directed verdict, by defendant. Denied. For directed verdict, by plaintiff. Granted. | For summary judgment, by defendant. Granted. | For directed verdict, by defendant. Decision reserved. |
| JUDGMENT. | For plaintiff. | For plaintiff. | For defendant. | For plaintiff. |
| POST-VERDICT MOTIONS. | For new trial, by defendant; denied. No motion for judgment *n. o. v.* | For new trial, by defendant; denied. No motion for judgment *n. o. v.* | None. | To set aside the verdict, by defendant; denied on ground that evidence sufficient to support cause of action. |
| TIME ELAPSED BETWEEN JUDGMENT AND MOTION. | 62 days. | 8 days. |  | Motion made immediately after verdict. |
| DISPOSITION IN C. A. | District Court directed to enter judgment for defendant. 153 F. 2d 576. | District Court directed to enter judgment for defendant. 160 F. 2d 800. | District Court directed to enter judgment for plaintiff. 171 F. 2d 999. | District Court directed to enter judgment for defendant. 194 F. 2d 194. |
| DISPOSITION HERE. | Reversed. Trial judge must be given chance to exercise discretion to enter judgment *n. o. v.* or grant a new trial. | Reversed. *Cone* case governs. | Reversed. C. A. judgment entered "on a new issue as to which the opposite party had no opportunity to present a defense before the trial court." 336 U. S. at 683. |  |

MR. JUSTICE MINTON, dissenting.

I agree with all that MR. JUSTICE FRANKFURTER has said in upholding the action of the Court of Appeals in returning the case to the District Court with directions to enter a verdict for the defendant. I would add another reason why I think the action was valid.

After the *Cone, Globe Liquor* and *Fountain* cases were decided, Congress in 1948 revised the Judicial Code, and in 28 U. S. C. § 2106 clearly authorized the action taken by the Court of Appeals here. Section 2106 reads as follows:

> "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

To me, this statute is controlling. We found it controlling of the action of the Court of Appeals in a criminal case. *Bryan* v. *United States,* 338 U. S. 552. MR. JUSTICE BLACK, who now speaks for the Court, dissented in the *Bryan* case because he thought *Cone* controlling. By act of Congress, the discretion now rests with the Court of Appeals to grant a new trial or to direct a verdict according to law on the record already made.