Thomas A. DRINAN, Special Administrator of the Estate of Beatrice Williams, deceased, Plaintiff,

v.

A. J. LINDEMANN AND HOVERSON COMPANY, a corporation licensed to do business as a corporation in the State of Wisconsin, Defendant.

Civ. A. No. 5245.

United States District Court
E. D. Wisconsin.

Jan. 17, 1956.

Alphonse Lewis, Jr., Floyd Howard Skinner, Grand Rapids, Mich., Bitker & Marshall, Milwaukee, Wis., for plaintiff.

Suel O. Arnold, Milwaukee, Wis., for defendant.

TEHAN, Chief Judge.

Motions after verdict have been made and filed by each party to this action in which plaintiff, a Michigan resident, seeks recovery for damages sustained in Michigan by plaintiff's deceased as the result of the negligent manufacture of an oil stove by defendant, a Wisconsin corporation.

Upon the conclusion of the testimony the defendant made a motion to dismiss which motion the Court denied, and submitted the issues to the jury in the form of a special verdict.

By their answers to the several questions and their respective subdivisions, the jury found that the stove manufactured by defendant was not defective with respect to its design and the materials used in its manufacture, but did find it defective with respect to the manner in which the stove was manufactured so as to render it dangerous to life and limb when used in the manner that it was intended to be used and that negligence in such respect was an efficient cause of the accident and of the plaintiff's injuries.

The jury also found that plaintiff's decedent, Beatrice Williams, was negligent with respect to failure to use ordinary care for her own safety and that such negligence was an efficient cause of the accident and decedent's injuries.

The jury fixed plaintiff's damages in the amount of $10,000 for conscious pain and suffering, $30,000 for pecuniary loss to the minor child, and $1,000 for loss of services to plaintiff.

Since the jury's finding of causal negligence on the part of plaintiff's decedent, if left to stand undisturbed by this Court, is an absolute bar to recovery under the laws of Michigan in which state this accident occurred, the plaintiff has interposed a series of motions seeking changes in the answers to the questions touching upon contributory negligence and for judgment on the verdict as so changed, or in the alternative for a new trial.

The defendant has made objection to the consideration by this Court of any of plaintiff's motions except those praying for a new trial. It alleges as a basis for such objection that said motions constitute motions for judgment notwithstanding the verdict, to which relief plaintiff is not entitled by reason of failure to have made a motion for a directed verdict during the trial and for the further reason that those motions which were filed were not timely made in compliance with Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

■ It would appear that defendant's objection is well taken on both grounds.

The plaintiff did not move for a directed verdict at any stage of the trial. As a consequence he is estopped from claiming relief other than in the form of a new trial.

■■ The reason why a motion for a directed verdict is a prerequisite to a motion for judgment notwithstanding a verdict is stated by Judge Gardner in Mutual Benefit Health & Accident Ass'n v. Thomas, 8 Cir., 1941, 123 F.2d 353, 355, as follows:

"By the Seventh Amendment to the Constitution, it is provided that, 'In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.'

"The courts of the United States are by this amendment prohibited from re-examining any facts tried by a jury otherwise than according to the rules of the common law. It has often been pointed out that the only modes known to the common law to re-examine such facts were the granting of a new trial by the court when the issue was tried to a jury, or by granting a motion for a directed verdict.

\* \* \* \* \* \*

"It is only where a litigant has made motion for a directed verdict that he may ask the court to enter judgment non obstante veredicto. It is only in this manner that the question may be re-examined as a question of law, To ask the court to enter a judgment, contrary to a general verdict of the jury where no motion for a directed verdict has been interposed, is simply to ask the court to re-examine the facts already tried by the jury, and this the court may not do without violating the Seventh Amendment."

■ The verdict was returned in this case on December 3, 1954, but plaintiff did not serve his motion until January 7, 1955, some thirty-five days later.

Rule 50(b) of the Federal Rules of Civil Procedure provides as follows:

"Reservation of Decision on Motion. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. \* \* \*"

In the recent case of Mickey v. Tremco Mfg. Co., 7 Cir., 226 F.2d 956, where the defendant waited some nineteen days before making the motion, the United States Court of Appeals for the Seventh Circuit sustained plaintiff's objection that motions for judgment notwithstanding the verdict were not entertainable by the Court because not timely made within the ten day period provided in Rule 50(b). The Court relied on the authority of Johnson v. New York, N. H. & H. R. Co., 1952, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77.

It appears then that the only relief which plaintiff is eligible to now seek is an order granting a new trial.

In plaintiff's original motion, he moved in the alternative for a new trial limited to the issue of contributory negligence. Thereafter, he filed an amended motion for a new trial on the issue of contributory negligence setting forth some twenty-two grounds therefor. In a second amended motion he advanced one additional ground.

We see no necessity of discussing each of the grounds advanced. In substance they are a recital of objections, timely made, to the form of the special verdict and instructions on which this case was submitted to the jury. The position the court took in overruling such objections at that time, which position we, after re-examination of the evidence and the law now affirm, is dispositive of plaintiff's motion for a new trial.

When both parties to this law suit had rested, this court in the preparation of the questions in the special verdict had before it the following evidence: Plaintiff's decedent, Beatrice Williams, with her husband Eunice, and her young daughter, Shirlene, by a previous marriage, resided in the ground floor portion, consisting of a kitchen and two bedrooms, of a two-story frame building situated to the rear of the premises in which her parents, Mr. and Mrs. Homer

Carter resided, in the City of Muskegon, Michigan.

The kitchen was rectangular in shape and in area was about equal to the combined area of the two bedrooms which opened off the kitchen. One of these bedrooms was occupied by Mrs. Lilli Brown and her husband. The other bedroom was used by Mr. and Mrs. Williams and the child.

On March 18, 1948, a two-burner oil stove, approximately eight and one-half inches high and twenty-eight inches long, manufactured by defendant was purchased by the parents of the deceased in its original package as furnished to Sears, Roebuck.

The accident occurred some time late in the afternoon of March 20th, at which time the evidence showed that the following events took place: The husband Eunice Williams carried the stove to the kitchen of his home, set it up on a stand in the kitchen about seven or eight feet directly ahead of Lilli Brown's bedroom door, filled it with kerosene, but made no attempt to light it to see how it worked. He then left the premises to visit a neighbor.

At the time he left there, were five persons within the premises, the deceased, Beatrice Williams, who was in the kitchen setting about preparations for the evening meal, her one and one-half year old daughter, Shirlene, Mrs. Lilli Brown, who for some time past had been confined to her bed by reason of injuries, and Mrs. Geraldine Hopson, a sister-in-law of Lilli Brown, who with her two year old son, had come to visit the bedridden Mrs. Brown.

Geraldine Hopson entered the house through a door on the south side of the house which opened into the kitchen. There was another door to the kitchen but that one was rarely or never used. Immediately to her right and approximately three steps from the door she entered, was a door leading to Lilli Brown's room. She observed that Beatrice Williams was active in the kitchen, greeted her, and went into Mrs. Brown's room, and sat down and visited with her. Her son, Harvey, in the meantime was playing with Mrs. Williams' young daughter. The door to the bedroom was not closed, but from where she was sitting in Lilli Brown's bedroom, she couldn't see what Beatrice was doing, and Lilli Brown was likewise unable to see into the kitchen. She heard Mrs. Williams "humming and bouncing about".

She then heard Mrs. Williams say something about a stove, but didn't clearly understand what it was. Lilli Brown then explained to her that Mrs. Williams said the stove was acting up, so she quickly got up and went and looked and when she got there, the stove was blazing real high. She described the flames as yellowish and smoky like, coming up up about two feet high. She then went out the nearby outside door to get help and she cried "Fire, Fire". She had gotten about five, six or seven feet outside when she heard her sister-in-law call to come back and save the children. The kids were in Lilli Brown's bedroom where she grabbed them and ran out immediately.

Mrs. Hopson did not get burned going outside the first time. There were no other flames in the kitchen except the two yellowish flames coming from the burners. There was nothing on top of the stove. Mrs. Williams was about five or six feet away from Mrs. Hopson when Mrs. Hopson went out the door the first time. Mrs. Williams was "fluttering about" somewhere near the stove.

When Mrs. Hopson returned to the house for the children, Beatrice Williams was not in the room. While she couldn't see Beatrice Williams she could hear her screaming loud and continuously with noises apparently issuing from the bedroom. Neither the children nor Mrs. Hopson were burned when they went out the second time. Her estimate of the time it took from the time she observed the flame, went out, came back and got the children and went out was about a half minute or something like that. Help arrived and she saw them pull Lilli out of the Brown's bedroom, and then saw them take Beatrice out of the other bed-

room. Beatrice's clothing had been burned off and the skin pulled off as they tried to pull her through the window.

Under that state of the evidence it appeared to the court that a question of fact existed upon the matter of the contributory negligence of the deceased, Beatrice Williams, in regard of her own safety. It appeared to the court that under the evidence the jury might find, and subsequently did find, that the deceased recognized that the stove was acting improperly when she cried out that the "stove was acting up". The jury could infer from the credible evidence that at the time there were two flames, which while high, were confined to the burners, and that the fire had not yet reached the person of Mrs. Williams. The jury could further conclude that if the nature of the flames was sufficient to alarm Mrs. Hopson and send her out screaming "Fire", that the deceased should have then or before in the exercise of ordinary care acted to extricate herself from a position of danger.

█ Under this state of the evidence the court felt that two questions touching upon the negligence of the deceased should be submitted to the jury, and overruled the objections made by plaintiff's counsel to such course of action. For the same reasons, we now find that the answers of the jury to the questions of contributory negligence are sustainable from the inferences of the credible evidence in the case.

█ Counsel for the plaintiff at the time he made objections to the submission of the contributory negligence questions and in his briefs on this motion for a new trial, has taken the position that there was no eyewitness to this accident, and for that reason the plaintiff's decedent is entitled to the presumption that she was acting in the exercise of due care.

The doctrine of the presumption of due care in Michigan is an admittedly difficult one to apply. In dealing with the presumption of due care, the Michigan Supreme Court in the earlier cases followed the view that the presumption will fall only if evidence to the contrary is offered. In later years the court adopted the test, as to whether or not the presumption would apply, of the existence or non-existence of an eyewitness rather than the presence or absence of contrary evidence.

Thus in Foote v. Huelster, 272 Mich. 194, 261 N.W. 296, 298, the rule is stated to be as follows:

"Where there is an eyewitness to an accident, the issue of due care rests upon proof and not upon presumption. This is so even if the eyewitness is the adverse party."

To the same effect is Mullaney v. Woodruff, 280 Mich. 66, 67, 273 N.W. 395, wherein the court's opinion seems to imply that the mere existence of an eyewitness apart from what testimony he may give is sufficient to rebut the presumption.

Apparently the harsh results that followed from making the right to the presumption depend upon the existence of an eyewitness irrespective of his testimony induced the court to modify the Foote v. Huelster, supra, ruling, but it appears that the Michigan Court has not yet returned to its test of looking to the evidence to overcome the presumption but is involved in determining who is or is not an eyewitness.

It appears to this court, however, that whether in testing the application of the presumption we apply the harsh test of "was there an eyewitness" or the test "was there contrary evidence," the result will be the same. Here there was an eyewitness who was in a position to give credible evidence from which the jury might fairly conclude not that the decedent had been negligent in causing the explosion but that she had been contributorily negligent in failing to use ordinary care for her own safety.

The motion therefore of the plaintiff for a new trial upon all of the grounds alleged must be denied since the evidence produced at the trial of this action raised a question of fact of decedent's contribu-

tory negligence in respect of her own safety, and the jury's answers are supported by credible evidence.

The defendant has filed timely motions after verdict. Under the circumstances here present, we think it necessary to deal only with his motion for judgment on the verdict dismissing the plaintiff's complaint upon its merits, which motion we hereby now grant with costs.