Leon REINER and wife, Bertha Reiner, Plaintiffs,

v.

Isadore D. BLUMENTHAL, Defendant.

Civ. A. 936.

United States District Court W. D. North Carolina, Charlotte Division.

Dec. 20, 1956.

Harold D. Cooley and Hubert E. May, Nashville, N. C., Frank E. Winslow, Rocky Mount, N. C., for plaintiffs.

M. A. Weinstein, Helms & Mulliss, William H. Bobbitt, Jr., Charlotte, N. C., for defendant.

WARLICK, District Judge.

This is a motion for judgment, Non Obstante Veredicto, made by plaintiffs within ten days after the reception of a verdict against them by the jury, under preemptory instructions given by the court in the trial of the cause. The motion is made under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The trial of the case was had during the second week of the 1956 fall term at Charlotte. In order that a complete understanding of the matters involved be had, it is necessary to make specific findings of fact from the testimony heard at the trial. Motions for directed verdicts were made as Rule 50 requires, and being denied, brought about the submission of the matter to the jury, and a return of its verdict.

This action was brought for the purpose of a recovery on two notes, each dated January 23, 1951, executed by de-

fendant, and payable to the plaintiffs; one note for $10,000 due November 15, 1951, and payable at the Commercial National Bank, Charlotte, North Carolina, with interest at 3%, the other note being for $15,000, due November 15, 1952, and similarly payable at the Commercial National Bank, Charlotte, North Carolina, and bearing a like rate of interest. A failure to pay the first note accelerated the right to demand payment of the second note. Neither of said notes has been paid, and the whole thereof, together with interest, is due and owing.

The plaintiffs and the defendant are of the same race of people. The plaintiff, Leon Reiner, and defendant, Blumenthal, had known each other for approximately forty years, at the time of the trial, and are about the same age. They have engaged in numerous business transactions through the years, and have had much in common, socially and economically. Both are well educated and each is highly experienced in the business world. Evidently until their difficulties came about they had a high regard for each other.

During the late nineteen thirties plaintiffs had secured the exclusive sale rights to a large territory in the United States, and especially embracing the New York area, from a number of surgical and medical equipment manufacturers, especially those producing metabolism equipment, X-Ray properties, and electrograph appliances, and entered into the business of a distribution of these properties through lease and sale, and that of servicing all of that type of medical equipment,—carrying this business on under the terms of a partnership agreement.

On December 26, 1947, plaintiffs and a third person filed an application for a certificate of incorporation with the proper authorities in New York State, and were issued on January 2, 1948 a corporate charter under the name of L. & B. Reiner, Inc., with its principal place of business at 139 East 23 Street, Borough of Manhattan, City of New York. Ninety shares of common stock was duly authorized and issued and thereafter L. & B. Reiner became the owners of the whole of the said stock. The corporation enjoyed a considerable measure of success and on the first day of October, 1948, the defendant Blumenthal purchased 45 shares of said stock from plaintiffs, paying therefor the sum of $190,000; $50,000 was paid in cash and twenty promissory notes totalling $140,000 payable to plaintiffs were executed and delivered by Blumenthal. The 45 shares of stock purchased by Blumenthal was endorsed as collateral for the payment of the notes due plaintiffs for the purchase thereof.

The plaintiffs and the defendant were duly elected officers of the corporation with the defendant Blumenthal being named as executive vice president. Though the business was evidently a profitable one, no dividends were declared and paid on the common stock, the profits being retained in the corporation and used in the development of the business.

None of the notes executed and delivered by the defendant to the plaintiffs for the payment of the purchase price of the 45 shares of stock purchased by him were paid; considerable correspondence looking toward the collection of the notes came about—much discussion seemingly was had, and finally some time shortly prior to January 23, 1951, the defendant went to New York in an effort to work out some satisfactory means of taking care of his obligations, since the amount of these unpaid obligations reflected against any financial statement made by defendant. These meetings evidently got no where, and while the defendant was in New York he was served with a summons issuing out of the Supreme Court of New York, in which action the plaintiffs were seeking to collect the amounts due them by the notes theretofore executed and delivered by the defendant.

A copy of the complaint was not served on the defendant at the time of the service of the summons,—an extension being given, but in the ensuing talks and negotiations the defendant was fully apprised of the nature of the action and that its purpose was to secure judgment for the amount of the twenty notes totalling $140,000 and interest, due plaintiffs and

for a foreclosure of the collateral. Being thus acquainted with its purpose and after some negotiations the defendant shortly afterward returned to Charlotte, conferred with his regular counsel, Mr. Weinstein, and sometime later returned to New York and employed Judge Epstein, an outstanding member of the New York Bar, now Judge of the Supreme Court of New York, to represent him in said action.

Plaintiffs were represented by Judge Miller, likewise an outstanding member of the New York Bar, now deceased.

Defendant fully acquainted Judge Epstein with all of the many factors involved in the said action, his position, defenses, etc., and after considerable negotiations between counsel and the parties, lasting approximately a week, the contract offered in evidence as plaintiffs' exhibit No. 3 and dated January 23, 1951 was executed by the parties. Certain parts of the said contract directly pertinent to this inquiry are herewith copied:

"The parties have heretofore executed an agreement among them dated October 1, 1948, providing, among other things, for the sale by Leon Reiner and Bertha Reiner of the forty-five (45) shares of the common stock of the Corporation to Blumenthal. The sum of $158,900.00, representing the balance of the purchase price thereof together with accrued interest, remains unpaid. The parties desire to modify and amend said agreement in accordance with the provisions hereinafter contained.

"Now, therefore, the parties hereto do hereby mutually agree as follows:

"1. (a) The agreement between the parties heretofore executed and dated October 1, 1948 is hereby terminated and cancelled and shall be void and of no further effect.

"(b) All promissory notes executed by Blumenthal, pursuant to the terms of said agreement, shall be cancelled and returned to Blumenthal.

"2. The sum of $158,900.00, representing the unpaid balance of the purchase price for forty-five (45) shares of the common stock of the Corporation sold by Leon Reiner and Bertha Reiner to Blumenthal pursuant to the terms of the aforesaid agreement, shall be paid as follows:

"(a) Simultaneously with the execution of this agreement, Blumenthal will pay to Leon Reiner and Bertha Reiner jointly the sum of $25,000.00.

"(b) Simultaneously with the execution of this agreement, Blumenthal will execute and deliver to Leon Reiner and Bertha Reiner two (2) promissory notes payable to their order with interest at three (3%) per cent per annum as follows: one note in the face amount of $10,000.00 payable on November 15, 1951 and one note in the face amount of $15,-000.00 payable on November 15, 1952. Said notes shall provide that in the event the note first due is not paid on its due date, then the second note shall forthwith become due and payable.

"(c) In the event of the default in the payment of either of the aforesaid notes, Leon Reiner and Bertha Reiner jointly shall forthwith be deemed to have purchased the said forty-five (45) shares of stock now owned by Blumenthal in the same manner as if an offer to sell the same had been made by Blumenthal at the book value thereof. *The obligation of Blumenthal to pay the amounts set forth in said notes, together with interest, shall nevertheless survive, Blumenthal shall continue liable therefor and Leon Reiner and Bertha Reiner may institute any action at law or otherwise to enforce collection of same.*

"(d) The balance of $108,900.00 with interest at three (3%) per cent from the date hereof shall thereafter

be payable only out of dividends paid on the corporate stock now owned by Blumenthal, corporate salaries and bonuses or any other sums, if any, that may become due or payable to Blumenthal from the Corporation. Blumenthal does hereby authorize the Corporation to pay over to Leon Reiner and Bertha Reiner jointly all such dividends, salaries, and bonuses or any other sums, if any, that may become due and payable to him at any time on or prior to September 1, 1958, to be applied against said balance of $108,900.00 until the same, plus accrued interest at three (3%) per cent, has been fully paid and discharged. If any balance, as aforesaid, remains unpaid on September 1, 1958, Blumenthal does hereby sell, transfer and assign the forty-five (45) shares of the corporate stock now owned by him to Leon Reiner and Bertha Reiner jointly, the purchase price to be the amount of said balance which shall be credited in full payment of said balance and said shares shall be and become the sole property of Leon Reiner and Bertha Reiner without any right or redemption thereto in Blumenthal with the same force and effect as if Blumenthal had offered the same for sale to Leon Reiner and Bertha Reiner at the amount of said balance and Leon Reiner and Bertha Reiner had accepted the said offer.

"(e) In the event of a dissolution or liquidation of the Corporation, any sums that may become due and payable as a result thereof on the shares of corporate stock now held by Blumenthal, are hereby assigned to Leon Reiner and Bertha Reiner jointly to apply against the balance of $108,500.00 with interest as aforesaid and only the surplus if any, shall be delivered to Blumenthal.

"3. Pending payment in full of the balance as aforesaid, Leon Reiner shall hold said forty-five (45) shares of corporate stock now registered in the name of Blumenthal as collateral security for the payment of said sum."

According to the terms of this contract and in consequence thereof, the defendant paid the plaintiffs the sum of $25,000 in cash and simultaneously therewith as is provided, executed his two promissory notes, one for $10,000 payable on November 15, 1951 and another for $15,000 payable on November 15, 1952. Whereupon plaintiffs cancelled and surrendered to the defendant his twenty notes aggregating $140,000 and interest. Likewise in the same series of transactions a certificate of stock for 45 shares was issued to the defendant and was simultaneously endorsed over to the plaintiffs to be held by them as the terms of the contract prescribed.

Plaintiffs insisted all along during the negotiations that if certain favorable considerations were shown the defendant as he earnestly requested, that he would have to pay $50,000 in cash on the original debt of $140,000, but on its being made to appear that the defendant was unable to raise more than $25,000 at that time it was then agreed that his two notes payable as herein would be acceptable in lieu of a similar sum in cash.

The defendant defaulted in the payment of the first note of $10,000 due November 15, 1951, and likewise worked a default in the payment of the note for $15,000 due November 15, 1952. Thereafter this action was instituted. It has had a tedious progress.

Various delays in the filing of pleadings resulted, many different interrogatories were submitted, reciprocal motions for summary judgment were heard and finally the decks were cleared and the matter came on and was heard before the jury as these findings indicate.

The defendant admitted the execution of the two notes and his failure to pay them as they matured; that they are now outstanding. He contends however, that they were paid and as such should be

cancelled and surrendered, for that when plaintiffs took possession of the 45 shares of stock they had contracted and agreed in the contract of January 23, 1951 to pay therefor the book value of said stock on the date of the default in the payment of the notes; that the book value of said stock on that date was $55,949.70 under the computation agreed to in the contract and that the notes should be credited with so much of said amount as appeared necessary and that such credit would thereupon extinguish the amount of said notes.

In my preemptory instructions to the jury I adopted the contentions of the defendant as representing a fair interpretation of the contract between the parties. A subsequent study in the calm atmosphere of one's chambers under the motion filed has changed my thinking and it is now my opinion that the motion for judgment N. O. V. should be granted and that plaintiffs should recover of the defendant the face value of the two notes sued on, together with interest and costs. I come to this conclusion among other things for that,

The evidence shows that on January 23, 1951 defendant was indebted to the plaintiffs in the sum of $158,900 as evidenced by twenty notes, and that an action seeking a recovery of such sum had been instituted by plaintiffs in the Supreme Court of New York. On such date reputable counsel had been retained by both parties and that said agreement entered into on said date was in compromise and full settlement, accord and satisfaction of all of such indebtedness, and represented a meeting of the minds of the parties; that stipulations discontinuing the action were entered into closing the door to all matters prior to such date. That defendant executed the two promissory notes in the full sum of $25,000 pursuant to the terms of said agreement; that defendant failed and refused to pay the first note and thereupon accelerated the right to demand payment of the second note. That the contract of January 23, 1951 shows that in consideration of the payment by the defend-

ant to the plaintiffs of the sum of $25,000 in cash and the execution of two notes now sued on in the sum of $25,000, and regarded as cash, that plaintiffs thereupon released the defendant from any personal liability for the remaining amount due of $108,900; for that the evidence shows that no payment has been made on the balance of $108,900 except that represented by the transfer of stock in L. & B. Reiner, Inc., to the plaintiffs under date of November 15, 1951 when defendant defaulted, and that the rights of the parties are to be determined wholly under the terms of the contract of January 23, 1951. Further, under said contract it is my studied opinion that the 45 shares of stock were substituted for the personal liability of the defendant as the only source of payment of the $108,900; and that the dividends and any other income, together with the book value of the said stock was set aside and pledged as the only security for the said payment; and finally, for that a reasonable interpretation of the contract shows that when the defendant voluntarily defaulted in the payment of the first note due on November 15, 1951, that such default effected a transfer of the 45 shares of stock belonging to the defendant to the plaintiffs and at the book value of $55,949.70. That this was in full satisfaction of the amount of $108,900 due, and that no part of this sum could lawfully be applied under the terms of the contract to the personal obligations of the defendant on his two promissory notes. That the parties had expressly so contracted.

I am therefore setting aside the verdict and the judgment entered in the record on the 11th day of October, 1956 in favor of the defendant and will enter judgment in accordance with the motion of the plaintiffs for a directed verdict.

Rule 50(b), Federal Civil Procedure. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Galloway v. U. S., 319 U.S. 372, 63 S. Ct. 1077, 87 L.Ed. 1458; Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849; Globe Liquor

Co., Inc., v. San Roman, 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177; Eckenrode v. Pennsylvania R. Co., 335 U.S. 329, 69 S.Ct. 91, 93 L.Ed. 41; Johnson v. New York, N. H. & H. R. Co., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77.

Verdict for plaintiffs for $25,000, interest and costs. Submit decree.