F I L E D
United States Court of Appeals
Tenth Circuit

APR 19 2005

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CENTURY MARTIAL ART SUPPLY,
INC.,

     Plaintiff-Appellee,

v.

THE NATIONAL ASSOCIATION OF
PROFESSIONAL MARTIAL
ARTISTS, and INTERNATIONAL
IKON, INC.,

     Defendants-Appellants.

No. 03-6238

(D.C. No. CIV-02-736M)
(W.D.Okla.)

**ORDER AND JUDGMENT** *

Before **SEYMOUR, ANDERSON** and **BRISCOE** , Circuit Judges.

Defendants, the National Association of Professional Martial Artists

(NAPMA) and International IKON, Inc. (IKON), appeal a judgment entered after

a jury verdict in favor of plaintiff, Century Martial Art Supply, Inc. (Century), on

Century's claims for defamation, tortious interference with existing and/or

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

prospective business relationships, deceptive trade practices, and unfair competition. Defendants contend the judgment must be reversed because (1) the jury considered protected speech in violation of the First Amendment, (2) the district court erred in denying their motions for judgment as a matter of law (JMOL) given Century's failure to prove defendants' statements were defamatory or that special damages were incurred, and (3) the reversal of the jury's general verdict on any single claim necessitates reversal of its verdict on all claims. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

Century sells martial arts supplies including student uniforms. Its primary customers are martial arts schools. NAPMA is a martial arts trade association, founded by John Graden, that provides educational resources for approximately 1,800 subscribing martial arts schools throughout the country. NAPMA distributes promotional materials and information to assist those who manage and operate martial arts schools. The Martial Arts Professional Magazine is one of its monthly publications. NAMPA's materials have been described as a sort of "Consumer Reports" for the martial arts industry. Aplt. App. at 1129.

In 2001 in direct competition with Century, Graden began selling his own line of martial arts products under the IKON brand name. Both NAPMA and IKON are corporations wholly owned by Graden, who is also the CEO of both

corporations.

In its monthly mailings to martial arts schools (sixty-nine percent of which were customers of Century), NAPMA included a chart which compared three IKON uniforms with three Century uniforms. The chart indicated that Century's student uniform weighed 5.0 to 5.5 ounces, its wholesale price was ten dollars ninety-nine cents, it was made of 65% polyester and 35% cotton, and that a Century customer was required to purchase one thousand dollars worth of uniforms before receiving a discount. By comparison, the chart indicated IKON's uniform weighed seven ounces or more, its wholesale price was nine dollars ninety-nine cents, it was made of 60% cotton and 40% polyester, and an IKON customer could receive discounts on purchases of two hundred fifty dollars. The information about Century's uniform was false and the discount information was misleading.

Frank Silverman, an operator of a martial arts schools, stopped purchasing from Century after seeing the comparison chart in NAPMA's mailing. He explained the importance of the weight and quality of the uniform and their effect on his buying decision:

> We charge thousands of dollars for martial arts lessons . . . . I want to have a good-quality uniform represented in our school. It wouldn't make sense to say that we have this great martial arts program, but we give you a cheap uniform. [For] the image of our school, it is important that we have a uniform that lays well, does well, and durability, as well. A lighter-weight uniform wouldn't last

as long and then I would be refunding people's money, or giving them new uniforms, which would cost me money. Thirdly, really the biggest reason is the paper-thin and the lightweight uniform is the sweat comes through. There [are] two huge issues . . . with thin, paper-thin uniforms. One, . . . in martial arts, you work out with other people . . . . [W]hen it bleeds through, you don't want them sweating . . . on you . . . . [Also,] the biggest training tool that we have in a martial arts studio are the mirrors so you can see what you are doing, you can see the instructor, you can critique yourself. When you are in a uniform that the sweat just bleeds right through, it almost becomes see-through, which is an issue for everybody. You can see underwear, bras, anything.

Id. at 1669-70.

The President/CEO of Century contacted Graden to ask that he stop publishing inaccurate information about Century's uniforms. Graden responded that "he would print whatever he wanted; it was his magazine." Id. at 1745.

Some of the information from the comparison chart was reprinted in an e-mail NAPMA sent to its web-site subscribers. In turn, that e-mail was reprinted in Graden's *Martial Arts Professional* magazine. NAPMA repeated the allegations about the fabric content (cotton/polyester percentages) and weight of Century's uniforms, but noted that Century stated these figures were false. Id. at 4477. The e-mail also stated: "If the comparison is inaccurate, a letter from Century is all that was needed. Instead, they use the profits that they get from the industry to attack us . . .. We receive weekly calls saying Century is out to get us. I guess this is the first shot. What is Century afraid of?" Id. Century indicated at trial that it already had sent such a letter when these statement were made. Id. at

4

1112.

In a published article entitled *Let Us Lead by Example*, Graden referred to the September 11th attacks and stated, "[s]uddenly we had a much more menacing enemy to face than the bullies at Century." Id. at 1118. In his keynote speech at the NAPMA 2001 World Conference, which was re-printed, Graden stated the following:

> We believed that the biggest professional association working with the biggest supplier would be good for the industry. We thought the industry needed more unity and less fragmentation. They chose, instead, to threaten us and attack us. . . . Either way, we're ready for them. But we wanted you to know what's going on. When you see these new offers, know that they have nothing to do with helping our industry. They only exist to hurt NAPMA, *Martial Arts Professional* magazine and the World Conference. All of our progress on behalf of this industry is under attack.

Aplt. App. at 5076.

Century presented testimony that its sales suffered as a result of the defendants' actions. Century presented not only evidence of the loss of a major customer, but also evidence of a decline in revenue generally. The jury found for Century on all four claims and found the evidence that the defendants acted with reckless disregard was clear and convincing. The jury awarded Century both compensatory and punitive damages.

5

## II.

### *Privileged or constitutionally protected statements*

Defendants argue for the first time on appeal that the district court erred in permitting the jury to consider privileged or constitutionally protected statements in support of Century's claims, and that the jury's verdict may have been influenced by this evidence. "It is clear in this circuit that absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal." McDonald v. Kinder-Morgan, Inc., 287 F. 3d 992, 999 (10th Cir. 2002).

Defendants argue we should consider these previously unraised arguments because they present purely legal issues and, if we failed to consider them, a miscarriage of justice would result. We disagree. Were we to consider these belated defenses now, it would be Century who could claim a miscarriage of justice. Century prepared for trial and presented evidence without any notice from defendants that reference to statements made by Graden would violate his First Amendment rights or were in some way protected by statutory privilege. An appeal is not meant to serve as an opportunity to take a second stab at defending a case. Tele-Communications, Inc. v. C.I.R. 104 F. 3d 1229, 1233 (10th Cir. 1997).

### *Sufficiency of the evidence -- defamation*

Defendants also contend that the district court erred in denying their JMOL

motion because their statements were not defamatory, were at the most product disparagement, and were constitutionally protected or otherwise privileged.

Century argues defendants have waived these arguments. According to Century, the defendants did not argue to the district court that defendants' statements were constitutionally protected, otherwise privileged, or non-defamatory. Nor, Century argues, did defendants argue that their statements and representations were at most product disparagement and not defamation.

Defendants, however, insist they repeatedly argued that the evidence was insufficient to instruct the jury on Century's defamation claim, and they refer this court to the following assertion in their renewed motion for JMOL made at the close of evidence: "The Defendant moves under Rule 50, relative to the claims of the Plaintiff as a whole, as the evidence taken in the best light is insufficient relative to their establishing a prima facie case relative to their claims . . . ." Aplt. App. at 2432. Defendants also cite a similar statement made in objection to the jury instructions and as part of their initial JMOL motion at the close of Century's case. We are left then to decide whether the defendants' reference to a failure to sufficiently prove all of the prima facie elements of all claims without further clarification is sufficient to preserve the more specific arguments they make on appeal.

A JMOL motion "shall specify the judgment sought and the law and the

7

facts on which the moving party is entitled to the judgment." Fed. R. Civ. P. 50 (a)(2). Such a motion "made at the close of all the evidence preserves for review only those grounds specified at the time, and no others." Vanderhurst v. Colorado Mountain College Dist., 208 F. 3d 908, 915 (10th Cir. 2000). Further, in the absence of a Rule 50(b) motion, we have no authority to direct a verdict contrary to that of the district court, and would be limited to only the grant of a new trial. Johnson v. New York, N.H. & H.R. Co., 344 U.S. 48, 50-51 (1952). Even though Rule 50 "does not require technical precision in stating the grounds of the motion, it does require that they be stated with sufficient certainty to apprise the court and opposing counsel of the movant's position with respect to the motion." United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F. 3d 1207, 1229 (10th Cir. 2000). That is, "the motion must be made with enough specificity to allow the non-movant an opportunity to cure possible defects in proof which might otherwise make its case legally insufficient." Atchley v. Nordam Group, Inc., 180 F. 3d 1143, 1147-48 (10th Cir. 1999).

By incanting a generic argument that there was insufficient evidence to support any of the claims, the defendants failed to provide guidance to the district court or the opposing counsel regarding how Century's evidence fell short as a matter of law. It is not apparent from the record that either the district court or Century would have known from defendants' general arguments in Rule 50

motions and from their objection to jury instructions that the defendants were really arguing their statements and representations were at most product disparagement, and/or their statements were constitutionally protected, otherwise privileged, or non-defamatory. We therefore conclude defendants' motion and other arguments or objections upon which they now rely were not sufficiently specific to preserve their arguments. F.D.I.C. v. Schuchmann, 235 F. 3d 1217, 1231 (10th Cir. 2000).

*Sufficiency of evidence -- special damages*

Defendants contend that each of Century's claims requires proof of special damages, and that Century failed to establish special damages. Defendants argue the district court erred in denying their JMOL motion because there was insufficient evidence to establish special damages.

We review "*de novo* the denial of a motion for judgment as a matter of law . . , applying the same standard as the district court." O'Tool v. Genmar Holdings, Inc., 387 F. 3d 1188, 1194 (10th Cir. 2004). In reviewing the district court's decision, we draw all reasonable inferences in favor of the nonmoving party. Id. "The district court's refusal to grant JMOL will only be reversed if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Id.

Defendants point specifically to Century's defamation claim in support of

their argument that special damages were not proven. To find for Century on its defamation claim, the instructions required the jury to find that "[t]he publication directly caused Plaintiff [Century] to incur special damages." Aplt. App. at 109. Special damages were defined as "actual subjective damages that must be proven by specific evidence as to the time, cause, and amount. Special damages include out-of-pocket losses, including loss of customers/business, loss of sales, lost profits, and damages incurred to prevent additional losses." Id. at 113.

Under Oklahoma law, more than conclusory allegations are required to support recovery of special damages in a defamation action. Professional Asset Mgmt, Inc. v. Penn Square Bank, N.A., 607 F. Supp. 1290, 1295 (W.D. Okla. 1985). Allegations in support of a special damages claim are insufficient if they are "merely conclusory without foundation or explanation as to how the damages were occasioned or whether that they occurred as a natural and proximate result of the publication." Id. However, proof that "specific accounts were terminated" or some "concrete impairment of . . . business as a direct result" of the defamatory conduct is sufficient to establish special damages. Id.

Although there was additional evidence supporting revenue losses, the testimony of Frank Silverman was sufficient to support an award of special damages in this case. Before seeing the comparison chart, Frank Silverman purchased between one thousand and one thousand-two hundred uniforms a year

10

from Century. Aplt. App. at 1667. However, a "NAPMA box" or "NAPMA kit" containing the chart comparing Century's uniforms to IKON's uniforms led him to believe that he was purchasing an inferior product at a higher price. Id. at 1668-70. Silverman testified he began "purchasing then and continue[s] today to purchase all [his] student uniforms from Asian World and Martial Arts," rather than Century. Id. at 1671-72. Silverman stated "once I saw that in print, was able to make a direct comparison, it made me feel that the [Century] uniform was a substandard quality. Even though I had been purchasing for seven years, when you see it in paper like that directly, one to another, that made me put in question the quality of the uniform." Id. at 1686. Losing a major customer such as Silverman was proof of an actual economic loss, which was directly related to the defendants' defamatory conduct. Thus, even assuming *arguendo* that insufficiency of proof of special damages was preserved for appeal, Century, nevertheless, still met the requirement of proving special damages.

*General verdict form*

Finally, defendants argue that because a general verdict form was used our reversal of any one claim will require our reversal of the entire verdict. As we have found no merit in any of the defendants' contentions, this argument must fail as well.

The judgment of the district court is AFFIRMED. Defendants' motion to

11

file a supplemental appendix is GRANTED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge